**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON BOWE, *individually and on behalf of himself and all those similarly situated*<br><br>Plaintiff,<br><br>v.<br><br>ENVIRO PRO BASEMENT SYSTEMS, *et al.*<br><br>Defendants. | **BRIEF IN SUPPORT OF NAMED PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY AS COLLECTIVE ACTION**<br><br>No. 1:12-cv-2099-NLH-KMW |

**ON THE BRIEF:**

JUSTIN L. SWIDLER, ESQ.
NICHOLAS D. GEORGE, ESQ.

**SWARTZ SWIDLER, LLC
Attorneys for Plaintiffs**

**Dated:** March 11, 2013

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS IN SUPPORT OF MOTION ............................................. 3

    I.    The Court should conditionally certify the instant action as a collective action under the Fair Labor Standards Act. ...................................................................................... 8

        A.    Conditional Certification is warranted for unpaid post-shift time............................. 10

        B.    Conditional Certification is warranted for 30-minute per-shift pay deductions......... 11

        C.    Conditional Certification is warranted based on Defendants' failure to pay true overtime. ...................................................................................................... 12

    II.    This Court should facilitate notice to all class members............................... 13

CONCLUSION................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Andrako v. United States Steel Corp*., 2009 U.S. Dist. LEXIS 78788, (W.D. Pa. Sept. 2, 2009) .. 9

*Bosley v. Chubb Corp.*, 2005 U.S. Dist. LEXIS 10974 (E.D. Pa. June 3, 2005) ........................... 9

*Bouder v. Prudential Fin., Inc.*, 2008 U.S. Dist. LEXIS 25103 (D.N.J. 2008) ........................... 14

*Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, 12-13 (E.D. Pa. Apr. 11, 2011) ................................................................................................................................................ 8

*Chabrier v. Wilmington Fin., Inc.,* 2006 U.S. Dist. LEXIS 90756 (E.D. Pa. 2006) .................... 14

*De Asencio v. Tyson Foods, Inc*., 130 F. Supp. 2d 660, 661 (E.D. Pa. 2001) .............................. 14

*Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469 (S.D.N.Y. Nov. 16, 2010)...................... 9

*Harris v. Healthcare Servs. Group, Inc.*, 2007 U.S. Dist. LEXIS 55221 (E.D. Pa. July 31, 2007) 9

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) ...................................................................................................................................... 8, 13

*Lugo v. Farmer's Pride Inc.*, 2008 U.S. Dist. LEXIS 17565 (E.D. Pa. Mar. 7, 2008) .............. 8, 9

*Morisky v. Pub. Sev. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000) ...................... 8

*Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001) ........................................................ 9

*Parker v. NutriSystem, Inc.*, No. 08-1508, 2008 U.S. Dist. LEXIS 74896 (E.D. Pa. Sept. 26, 2008) .............................................................................................................................................. 8

*Titchenell v. Apria Healthcare Inc*., 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011).... 13

*Williams v. Securitas Sec. Servs.* USA, 2011 U.S. Dist. LEXIS 92337 (E.D. Pa. Aug. 17, 2011)  9

**Statutes**

29 U.S.C. §216(b) ........................................................................................................................... 8

29 U.S.C. Sec. 207(e) .................................................................................................................... 12

**Regulations**

29 CFR § 778.117 ......................................................................................................................... 12

29 CFR §778.109 .......................................................................................................................... 12

## INTRODUCTION

On April 9, 2012, Jason Bowe ("Named Plaintiff"), a former employee of Defendants EnviroPro Basement Systems and Michael Troyner[1] (Collectively, "Defendants"), filed suit asserting violations by Defendants of the Fair Labor Standards Act.  Named Plaintiffs filed an Amended Complaint on January 14, 2013.   Earlier this month, two other employees of Defendants filed Consent Forms to join this action.  Named Plaintiff now moves this Court to grant his motion for conditional certification.

Named Plaintiff seeks to certify this action as a collective action on behalf of all hourly foremen and laborers who worked for Defendants in the last three years.  Named Plaintiff asserts that he is similarly situated to all other laborers and foremen (the "putative class") because he, like all members of the putative class, was subjected to three distinct wage and hour violations of Defendants.  He further contends that Defendants' conduct in violating the FLSA was based on official policies of Defendants which were applied equally to the entire putative class.

In making the instant motion, Named Plaintiff relies on testimony and affidavits from himself and two other members of the putative class.  Named Plaintiff further relies on Defendants' own testimony, which establishes that the policies at issues are the official policies of Defendants, and accordingly, are applied to all members of the putative class equally.

The first policy at issue in the lawsuit is Defendants' uniformly applied rule that members of the putative class are not paid for all their compensable work time.  Specifically, Named Plaintiff contends that he and other putative class members were required to report to Defendants' centralized Newfield, NJ location at 7:00 am each day.  From there, they would travel in a company vehicle with supplies to the particular job site of the day, which was

---

[1] Michal Troyner is an owner and operator of EnviroPro Basement Systems.

1

typically a client's residence.  The crew would remain at the residence until about 3:30 pm each day.  All of the time (including the travel and the time at the residence) was paid.  However, Defendants considered the workday over once members of the putative class left the client's residence.

Defendants' practices and policies, however, required all members of the putative class to perform additional work duties after services were completed at the customer's house, such as transporting the company vehicles, employees, and supplies back to home-base; unloading and cleaning the company vehicles; preparing the vehicles for use the following day; and restocking deliverables.  Defendants failed to pay the putative class for all such time.

The second policy at issue in this action related to Defendants' automatically deducting 30 minutes of paid time from the work day from all class members as a lunch deduction, including when no 30-minute *bonafide* meal break was taken.  These policies applied to all members of the putative class.  Defendants concede that they did not require employees to take a lunch break, nor did they attempt in any manner to track whether lunch breaks were taken.  Named Plaintiff has come forward with three affidavits to demonstrate that members of the putative class regularly did not take a 30-minute meal break during their shifts.

Finally, the third policy at issues relates to Defendants failure to properly calculate the "regular rate" when computing overtime due.  Specifically Defendants paid commissions to members of the putative class, yet never calculate the regular rate using such commission payments.  Instead, Defendants admit via their own testimony that the overtime rate was solely based on the base hourly rate earned by an employee, and not based on a computation of *all* remuneration earned each workweek, as required by the FLSA.

2

As these policies were all implemented company-wide and were subjected upon each class member, this case is ripe for collective certification, and accordingly, Named Plaintiff respectfully requests that this Court grant his motion to conditionally certify the instant action as a collective action.

## STATEMENT OF FACTS IN SUPPORT OF MOTION

1.      Defendants' business consists of waterproofing residential basements, crawlspaces, and the installation of water removal systems in residential homes.  *See* Deposition of Michael Troyner, p.6, attached hereto as Exhibit A.

2.      Named Plaintiff Jason Bowe worked for Defendants as an hourly employee during relevant times herein.  Named Plaintiff began working for Enviropro since approximately 2005 or 2006.  Deposition of Jason Bowe, pp. 13-14, attached hereto as Exhibit B. Named Plaintiff worked in the capacity of Foreman and/or Service Manager for Defendants since at least April 1, 2009 until his termination in February, 2012.   *See* Defendants' Answers to Plaintiff's Interrogatories, pp. 2, 5, attached hereto as Exhibit C.

3.      Named Plaintiff's job responsibilities as a foreman included performing the same work as a laborer (i.e. installation and waterproofing services), overseeing the quality of work of other laborers, dealing with customers on the job site, and handling payments from customers. Deposition of Jason Bowe, pg. 30-31, Ex. B; Deposition of M. Troyner, p. 15, Ex. A.

4.      Thus, the foreman's and laborers' job duties regarding installation, waterproofing, and manual labor were the same.  Defendants confirmed that the foreman and laborers performed the same manual labor work duties at the client's house.  *See* M. Troyner Dep., pp. 14-15, Ex. A (describing the foreman as a "working foreman" who would perform the same manual labor duties as the laborers).

5.      The laborers and foreman shared the same work schedule – i.e. 7:00 AM to 3:30 PM. See Deposition of Cynthia Troyner, 30(b)(6) designee of Enviropro ("30(b)(6) Dep."), p. 18, attached hereto as Exhibit D.

6.      The foreman would report hours worked for himself and his crew and report those hours to Defendants.  30(b)(6) Dep., p. 11, Ex. D.  Thus, the laborers and the foreman would work on a job for the same amount of time.  *Id.*, p. 65.  They also would travel to and return from the job site together. *Id.*

7.      Defendants' corporate designee admitted that laborers and foremen received the same credit for hours worked on the job.  *Id*., p. 48.

8.       Thirty minutes of hourly pay were automatically deducted from each laborer's and foreman's daily hours worked.  *See Id.*, p. 75.  This time was supposedly designated as a lunch break.  *Id.*  It was Defendants' practice to automatically deduct a half an hour from the workers' daily pay as a lunch break.  *Id.*, p. 24.

9.      Defendants would deduct thirty minutes from a foreman and laborer's daily pay per day regardless of whether a thirty minute "lunch" break were actually taken. Bowe Dep., p. 45, Ex. B.  Named Plaintiff complained to Defendants that he and other laborers were being deducted a half an hour from their pay every day even though they were not taking uninterrupted lunch breaks. *Id.*, pp. 42-43.

10.     Defendants' 30(b)(6) designee testified that Defendants did not monitor whether the lunch breaks were actually taken with respect to Named Plaintiff or Defendants' other workers.  30(b)(6) Dep., pp. 13, 25, Ex. D.

11.     The foremen and laborers were paid for hours worked based upon the departure time from the client's house ***even though the work day did not end upon departure from the client's house***.  See *Infra*, Statement of Facts, ¶¶ 14-18.

12.     Defendants' Office Manager, Barbara Ogonowski (*see* Ex. C, p.2), understood that on a typical day, the foreman and laborers generally *left* the customer's house at 3:30 PM (i.e. the work day was not finished at 3:30 PM).   *See* Deposition of Barbara Ogonowski, Office Manager, pp. 35-36, attached hereto as Exhibit E (with relevant deposition exhibits attached thereto).   See also Bowe Dep., p. 24, Ex. B (". . . typically, at 3:30, we would depart the customer's house . . . .").

13.     It was Defendants' policy to record and compensate Named Plaintiff's, the laborers', and the foremen's hours worked based upon the ***departure*** from the client's house but not upon completion of the work day.  *See* Ogonowski Dep., pp. 28-29, Ex. E.

14.     After the time of departure from the customer's job site, the foremen and laborers were still required to perform additional work duties such as transporting Defendants' vehicles and supplies back to home-base, unloading and cleaning the vehicles for use the next day, and restocking new materials.   *See* Affidavit of Jason Bowe, attached as Exhibit F, ¶¶4-8, 22; Affidavit of Ryan Bowe, attached as Exhibit G, ¶¶4-9, 23; Affidavit of Cody Bowe, ¶¶4-9, 20, attached as Exhibit H.

15.     Thus Defendants' policy resulted in Defendants' ***failure*** to pay Named Plaintiff, other foremen, and laborers for all time worked, including but not limited to travel time from the job site to home base.  Defendants' Office Manager testified:

> Q.     Do you have an understanding that the policy at Enviropro
>         is to pay its workers from their time of arrival at the home
>         office until the work is completed at the client's house?

> A.      Yes.
>
> Q.      So the workers are paid from their time of arrival at the office at Enviropro until the work is completed at the client's house.
>
> A.      Yes.

*Id.*, p. 21, Ex. E.  Ms. Ogonowski confirmed that Defendants' did not include in their employees' hourly wages the time it took to transport trucks, employees, and materials back to the home base:

> Q.      Okay.  So the question was:  **did Defendants fail to pay the foremen and the laborers for time spent transporting the trucks from the job site to the home base**?
>
> A.      Did they pay them?
>
> Q.      Did they fail to pay them?
>
> A.      **Did they fail to pay them?  Yes.**

Ogonowski Dep., p. 46, Ex. E. (Emphasis added).

16.      Defendants' policies also resulted in the failure to pay foremen and laborers for any work performed at the home-base *after* the transportation of employees, trucks, and equipment had been completed, including (but not limited to) washing trucks, trash removal, restocking new materials, or anything else required by Defendants. Bowe Dep., p. 104, Ex. D.

17.      Depending on the location of the client's house, Named Plaintiff's, the laborer's, and foremen's unpaid travel and work time performed after the departure from the client's house amounted to between 30 and 90 minutes of unpaid time per day.  Bowe Dep., p. 48-49, Ex. B. *See also* Affidavit of Jason Bowe, Ex. F, ¶9; Affidavit of Ryan Bowe, Ex. G, ¶10; Affidavit of Cody Bowe, ¶10, Ex. H.

18.     As Named Plaintiff, the laborers and the foremen generally worked over 40 hours per week, Defendants' policies resulted in Defendants' failure to account for all overtime hours worked.  *See* Affidavit of Jason Bowe, Ex. F, ¶¶5-12, 14-18, 22; Affidavit of Ryan Bowe, Ex. G, ¶¶6-13, 15-19, 23; Affidavit of Cody Bowe, ¶¶6-13, 15-20, Ex. H.

19.     Defendants occasionally paid the foremen or laborers a sales commission for products or services sold to the customer. 30(b)(6) Dep., p. 35, Ex. D.  Defendants also paid the foremen or laborers a sales commission when those individuals secured new clients.  *Id.* pp. 35-36

20.     When Defendants paid such sales commissions, Defendants failed to account for that commission when calculating the employee's regular rate of pay for overtime purposes:

> Q.     When an employee received commission for a particular week, would that commission change the computation of the hourly rate for purposes of the overtime calculation?
>
> A.     Commission has got nothing to do with overtime. . . .

30(b)(6) Dep., p. 37, Ex. D.  *See also* Affidavit of Jason Bowe, Ex. F, ¶¶19-22; Affidavit of Ryan Bowe, Ex. G, ¶¶20-23.

21.     For example, in the pay period of May 18, 2009 to May 24, 2009, a week in which Named Plaintiff was paid overtime and received a sales commission, Defendant's 30(b)(6) designee admitted that Defendants did not include this sales commission as part of Plaintiff's wages for purposes of calculating Plaintiff's regular rate of pay:

> Q.     So you agree that his overtime rate is one and a half times his hourly rate?
>
> A.     Yes.
>
> Q.     So do you agree that the payment of a commission that week did not affect [Named Plaintiff's] overtime rate?

7

>    A.    No, it didn't affect it.

*Id.*, pp. 43-44, Ex. D.  *See also* Affidavit of Jason Bowe, Ex. F, ¶¶19-22; Affidavit of Ryan Bowe, Ex. G, ¶¶20-23.

**I.  The Court should conditionally certify the instant action as a collective action under the Fair Labor Standards Act.**

In order to bring claims for overtime violations collectively pursuant to the Fair Labor Standards Act, the representative plaintiffs must seek certification of an opt-in collective action pursuant to 29 U.S.C. §216(b).  Collective action treatment affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Morisky v. Pub. Sev. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 496 (D.N.J. 2000), *quoting Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). "Collective action treatment under § 216(b) also reflects a policy in favor of judicial economy by which the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Bramble v. Wal-Mart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457, 12-13 (E.D. Pa. Apr. 11, 2011).

Courts in this Circuit have adopted a two-step procedure for analyzing a proposed collective action. In the first stage, the district court makes a "preliminary inquiry into whether the plaintiff and the proposed group are similarly situated. This inquiry occurs early in the litigation when minimal evidence is available to the court." *Parker v. NutriSystem, Inc.*, No. 08-1508, 2008 U.S. Dist. LEXIS 74896 (E.D. Pa. Sept. 26, 2008). In the second stage, after discovery is complete, the court conducts a "factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate member of the collective action." *Lugo v. Farmer's Pride Inc.*, 2008 U.S. Dist. LEXIS 17565 (E.D. Pa. Mar. 7, 2008). The second-stage

determination "require[s] a higher level of proof than was necessary at the first stage for conditional certification." *Id.* The present motion implicates the first step.

Courts in this Circuit require a representative plaintiff to "make a 'modest factual showing' that the similarly situated requirement is satisfied." See, e.g., *Bosley v. Chubb Corp.*, 2005 U.S. Dist. LEXIS 10974 (E.D. Pa. June 3, 2005). While not non-existent, the "modest factual showing" standard is "undemanding and ***extremely*** lenient." *Williams v. Securitas Sec. Servs.* USA, 2011 U.S. Dist. LEXIS 92337 (E.D. Pa. Aug. 17, 2011) (emphasis added). Under this burden, a plaintiff must "provide a sufficient factual basis on which a reasonable inference could be made that potential plaintiffs are similarly situated." *Andrako v. United States Steel Corp.*, 2009 U.S. Dist. LEXIS 78788, (W.D. Pa. Sept. 2, 2009), *quoting Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001).

It is important to note that the *only* issue the Court is to concern itself with in this stage of the certification process is whether the potential opt-in plaintiffs for whom the representative plaintiffs seek Court-supervised notice are similarly situated. *Bramble*, 2011 U.S. Dist. LEXIS 39457 at *13. "[A]t this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Id., citing Guillen v. Marshalls of MA, Inc.,* 750 F. Supp. 2d 469 (S.D.N.Y. Nov. 16, 2010); *see also, e.g., Lugo v. Farmer's Pride, Inc.*, 2008 U.S. Dist. LEXIS 17565, 9-10 (E.D. Pa. Mar. 7, 2008) ("the Court does not evaluate the merits of the claim at this stage, but only considers whether Plaintiffs have shown they are similarly situated"); *Harris v. Healthcare Servs. Group, Inc.*, 2007 U.S. Dist. LEXIS 55221 (E.D. Pa. July 31, 2007) ("the merits of plaintiffs' claims need not be evaluated in order for notice to be approved and disseminated").

Here, Named Plaintiff seeks this Court to certify the instant action as a collective active and facilitate notice to all hourly foremen and laborers of Defendants who worked for Defendants within the last three years.  Named Plaintiff contends that Defendants maintained three policies which affected all members of the putative class and which violate the FLSA.  The policies at issues are: (1) Defendants' failure to pay members of the putative class for all time worked after the departure from the client's house (including transportation of employees, vehicles and materials back to Defendants' Newfield, NJ location; the cleaning and unloading the trucks; and restocking of new materials); (2) Defendants' automatic meal deduction policy; and (3) Defendants' failure to pay time-and-one-half of each putative class member's regular rate of pay, for weeks in which those individuals worked over 40 hours and received commission.

### A.  <u>Conditional Certification is warranted for unpaid post-shift time.</u>

Conditional certification is warranted for the first policy at issue in this matter (failing to pay members of the putative class for the time worked following the employee leaving the client's residence).  Defendants' own management established that Defendants' policy was to pay their workers from their time of arrival at Defendants' Newfield location until the time of departure at the client's residence.  Statement of Facts, ¶12-13, 15.  This policy resulted in the failure to pay the putative class for travel time from the client's house to Defendants' home base and for work performed at Defendant's centralized location.  *Id.  See also* Affidavit of Jason Bowe, Ex. F, ¶22; Affidavit of Ryan Bowe, Ex. G, ¶23; Affidavit of Cody Bowe, ¶20, Ex. H.  This issue is ripe for collective certification because it is undisputed that this policy was subject upon all members of the putative class equally.

**B. Conditional Certification is warranted for 30-minute per-shift pay deductions.**

Conditional certification is warranted as to the second policy (automatic lunch deductions) as well. Defendants again *admitted* the policy at issue was equally employed against all members of the putative class. Specifically, members of the putative class were subject to a pay policy wherein 30 minutes of each shift was deducted from the pay of the individual employee and counted as an alleged lunch break. Yet Defendants failed to keep any records regarding when lunches were taken, nor did they require the employees take a lunch break each shift. Defendants' 30(b)(6) designee testified as follows with respect to this policy:

> Q.  Okay. Are you aware of your company's policies related to lunch breaks?
>
> A.  Well, we prefer they take a lunch. If they do, they do. If they don't, they don't. Again, that's out of my control. The work they do is very hard. I believe they need to refuel. I don't think they should be skipping lunches or skipping breaks, but there again, I have no control over what they do once they leave.

30(b)(6) Dep., pp. 12-13.

While Defendants assert that they have no control over whether an individual actually took a *bonafide* 30-minute meal break, Defendants *do* have control over whether they dock employees for 30-minutes per day. Moreover, Defendants have control over how they direct employees to track their time.

> Q.  So that's eight and a half hours [in a work day]?
>
> A.  Yes.
>
> Q.  So are [the employees] paid on an eight-hour day under the assumption that they take a half hour work break?
>
> A.  Lunch, yes.

11

30(b)(6) Dep., p. 24. *See also* Affidavit of Jason Bowe, Ex. F, ¶22; Affidavit of Ryan Bowe, Ex. G, ¶23; Affidavit of Cody Bowe, ¶20, Ex. H.

Accordingly, because Defendants uniformly subjected each member of the putative class to its unlawful 30-minute deduction policy, Named Plaintiff is similarly situated to all other members of the putative class with respect to this violation.

### C. <u>Conditional Certification is warranted based on Defendants' failure to pay true overtime.</u>

Finally, the third policy at issue – Defendants' failure to include commissions and other remuneration in an employee's "regular rate" when calculating overtime earnings – is also ripe for conditional certification.

Pursuant to the FLSA, all hours worked beyond 40 per workweek must be paid at time-and-one half the "regular rate." The "regular rate" is a legal term of art and is not necessarily an employee's base hourly rate. The "regular rate" instead "shall be deemed to include *all remuneration* for employment paid to, or on behalf of, the employee" subject to a several exceptions. 29 U.S.C. Sec. 207(e) (Emphasis added). "The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 CFR §778.109. The DOL has specifically provided that commission payments *must be included in the regular rate of pay when determining overtime. See* 29 CFR § 778.117 ("Commissions . . . are payments for hours worked and must be included in the regular rate. This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to [an] . . . hourly rate.").

Here, Defendants admit that they only paid 1.5 times the employee's base rate for overtime hours worked – even during weeks where the employee earned a commission. *See* 30(b)(6) Deposition, Ex. D at p.37 ("Commission has got nothing to do with overtime."); *see also id.* at pp 43-44 (confirming example of policy wherein Defendants do not calculate commissions into the regular rate when calculating overtime). This policy affected laborers and foremen alike, and accordingly, is ripe for collective certification. Statement of Facts, ¶¶ 20-21. *See also* Affidavit of Jason Bowe, Ex. F, ¶¶19-22; Affidavit of Ryan Bowe, Ex. G, ¶¶20-23.

Thus, Named Plaintiff has presented evidence in the form of affidavits and deposition testimony which reveals that the foremen and laborers were paid in accordance with the same policies, and accordingly are similarly situated for purposes of this case. Such evidence amply provides the "modest factual showing" required for this Court to infer that Named Plaintiff is similarly situated to Defendants' hourly laborers and foremen. *See Titchenell v. Apria Healthcare Inc*., 2011 U.S. Dist. LEXIS 129475 (E.D. Pa. Nov. 8, 2011) (modest factual showing burden met by providing two affidavits of individuals). Accordingly, as Named Plaintiff has presented evidence that all foremen and laborers were subject to the same policies that Named Plaintiff contends are unlawful under the FLSA, Named Plaintiff respectfully requests that this Honorable Court grant Named Plaintiff's motion.

**II.  This Court should facilitate notice to all class members.**

District courts have discretion in appropriate cases to implement 29 U.S.C. § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). "Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial

notice, rather than at some later time." *Id.* at 171. "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed. This procedure may avoid the need to cancel consents obtained in an improper manner." *Id.* at 172. "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Id.*

In this Circuit, courts routinely facilitate notice to class members once a case is conditionally certified. *See, e.g. De Asencio v. Tyson Foods, Inc.*, 130 F. Supp. 2d 660, 661 (E.D. Pa. 2001); *Chabrier v. Wilmington Fin., Inc.,* 2006 U.S. Dist. LEXIS 90756 (E.D. Pa. 2006); *Bouder v. Prudential Fin., Inc.*, 2008 U.S. Dist. LEXIS 25103 (D.N.J. 2008).

Accordingly, Named Plaintiff respectfully requests that this Honorable Court order facilitated notice by requiring Defendants to provide the last known contact information for all individuals who were employed as foremen and/or laborers from March 11, 2010 (three years preceding the date this motion was filed) to the present to permit Named Plaintiff to provide notice to each individual.  Named Plaintiff further seeks this Court order that within 15 days of the Court issuing its order regarding conditional certification, the parties confer regarding a proper notice and provide a copy of the agreed upon notice and method(s) of notice to this Court. In the even the Parties cannot agree on the language, the Parties shall submit their proposed notice within 15 days of the Court's decision.

## CONCLUSION

For the foregoing reasons, Named Plaintiff respectfully requests that this Honorable Court grant the instant motion.

Respectfully Submitted,

/s/ Justin L. Swidler
Justin L. Swidler, Esq.
Nicholas D. George, Esq.
**SWARTZ SWIDLER, LLC**
**1878 Marlton Pike East, Ste. 10**
Cherry Hill, NJ 08003
Phone: (856) 685-7420
Fax: (856) 685-7417

March 11, 2013

15