UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JASON BOWE,                           Civil No. 12-2099 (NLH/KMW)

          Plaintiff,

     v.                               **OPINION**

ENVIROPRO BASEMENT SYSTEMS,
et al.,

          Defendants.

---

**APPEARANCES:**

Justin L. Swidler, Esquire
Nicholas Dennis George, Esquire
Swartz Swidler, LLC
1878 Marlton Pike East
Society Hill Office Park
Suite 10
Cherry Hill, New Jersey 08003
     *Attorneys for Plaintiff Jason Bowe*

James M. Carter, Esquire
Law Offices of Hoffman DiMuzio
4270 Route 42
Turnersville, New Jersey 08012
     *Attorney for Defendants Enviro Pro Basement Systems and*
     *Michael Troyner*

**HILLMAN, District Judge**

     This matter comes before the Court by way of Plaintiff's

motion [Doc. No. 15] to certify conditionally this action as a

collective action pursuant to Section 216(b) of the Fair Labor

Standards Act.  Defendants have not filed opposition to the

present motion, and the time for filing opposition has expired.[1]
The Court has considered Plaintiff's submissions and decides
this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Plaintiff's motion will be
granted.

I.   <u>JURISDICTION</u>

Although a class has not yet been certified, Plaintiff
purports to brings this action on behalf of himself and all
others "similarly situated" to remedy alleged violations of the
Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, <u>et</u> <u>seq.</u>
Accordingly, the Court exercises jurisdiction over this matter
pursuant to 28 U.S.C. § 1331.   Plaintiff also asserts claims

---

[1]   By letter [Doc. No. 17] dated April 1, 2013, Defendants
sought a two-week extension of time to respond to Plaintiff's
motion for conditional certification and a two week adjournment
of the motion day.  The Court granted Defendants' request by
Text Order entered on April 2, 2013, and directed the Clerk to
reset the motion day to May 6, 2013.  Accordingly, Defendants'
opposition was due by no later than April 22, 2013.

Despite seeking and obtaining an extension of time and an
adjournment of the motion day, Defendants have failed to oppose
Plaintiff's motion as of the date of this Opinion.  Plaintiff
has requested that the Court consider Plaintiff's motion
unopposed by letter [Doc. No. 19] dated June 26, 2013.  In light
of Defendants' continued failure to file opposition or to seek
an additional extension of time at any point since April 22,
2013, the Court grants Plaintiff's request and considers this
motion unopposed.

under the New Jersey Wage and Hour Law ("NJWHL") and the New Jersey Wage Payment Law ("NJWPL").  The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.


II.   **BACKGROUND**

Defendant Enviro Pro Basement Systems (hereinafter, "Enviro Pro") is a residential basement waterproofing business that also installs water removal systems in residential homes.[2]  (See Am. Compl. ¶ 7; Br. in Supp. of Named Pl.'s Mot. To Conditionally Certify as Collective Action (hereinafter, "Pl.'s Br."), Statement of Facts ("SOF") ¶ 1.)  Defendant Michael Troyner is the owner and operator of Enviro Pro.  (See Am. Compl. ¶ 8; Pl.'s Br. 1.)  Plaintiff Jason Bowe was employed by Defendants from sometime in approximately 2005 (or 2006) until his termination in February 2012.  (See Am. Compl. ¶ 17; Pl.'s Br. – SOF ¶ 2.)  From approximately April 1, 2009 through the date of

---

[2]   There appears to be no dispute that Enviro Pro is an employer within the meaning of 29 U.S.C. § 203(d) which provides in pertinent part that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

his termination, Plaintiff Jason Bowe worked in the capacity of Foreman and Service Manager.  (Pl.'s Br. – SOF ¶ 2.)

Plaintiff's amended complaint [Doc. No. 11] alleges that he and the Collective Action Plaintiffs[3] were laborers whose primary duties involved providing basement waterproofing services, including, but not limited to, removal of mold and mildew, painting surfaces, and installing pumps.  (Am. Compl. ¶ 22.) Plaintiff asserts that the daily job routine of Plaintiff and the Collective Action Plaintiffs consisted of:

> (a) arriving at Defendants' Newfield, NJ location to receive information relating to the day's assignments, to load the company vehicle with supplies needed for the job, and to transport the company vehicle and employees to the job site;
> (b) transporting said vehicle and employees to the job site;
> (c) engaging in basement waterproofing services at the customer job site;
> (d) transporting the vehicle, employees, and supplies from the customer job site [back] to Defendants' Newfield, NJ location, and
> (e) unloading the company vehicle, cleaning and preparing the company vehicle for use the next day, and restocking new materials.

---

[3]   According to Plaintiff's amended complaint, "members of this putative class are referred to as" the "Collective Action Plaintiffs" and include "all persons presently and formerly employed as hourly employees of Defendants who worked or work for Defendants as installation technicians or in similar positions with similar duties, and who are/were subject to Defendants' unlawful pay practices and policies[.]"  (Am. Compl. ¶ 10.)

(Am. Compl. ¶ 23.)

Plaintiff alleges that Defendants violated the FLSA with respect to Plaintiff and all members of the putative class by: (1) failing to pay hourly employees for all their compensable work time; (2) automatically deducting 30 minutes of paid time from the work day as a lunch deduction even when no *bona fide* 30-minute lunch break was taken; and (3) improperly calculating the regular rate of pay when determining appropriate overtime compensation owed to these employees. (Pl.'s Br. 2-3.) Each of these alleged violations is detailed more fully below. Since the filing of Plaintiff's amended complaint, two potential op-in Plaintiffs have filed Consents to Join in this collective action, Ryan Bowe and Cody Bowe. (See Consent to Join Lawsuit [Doc. No. 14-1] 1; Consent to Join Lawsuit [Doc. No. 14-2] 1.)

### A.    Unpaid Post-Shift Hours Worked

With respect to the first alleged violation, unpaid post-shift hours worked, Plaintiff asserts that Defendants failed to pay Plaintiff and putative class members for hours spent performing work duties after their shift ended. According to Plaintiff, he and other putative class members reported to work at Defendants' centralized Newfield, New Jersey location each work day at 7:00 a.m., traveled in company vehicles to their

respective job site for the day - typically a client's residence - and would remain on the job site until approximately 3:30 p.m. (Id. at 1-2.)  All of these hours, including the travel time, were compensated by Defendants.  (Id. at 2.)  Plaintiff asserts, though, that "Defendant considered the workday over once members of the putative class left the client's residence."  (Id.)

Plaintiff represents that "Defendants' practices and policies ... required all members of the putative class to perform additional work duties after services were completed at the customer's house[.]"  (Id.; see also Am. Compl. ¶¶ 25-27, 29.)  These duties included transporting the company vehicles, employees, and supplies, back to the Newfield location; unloading and cleaning the company vehicles; preparing the vehicles for use the following day; and restocking deliverables. (Pl.'s Br. 2; Am. Compl. ¶¶ 26-27.)  Plaintiff contends that he and the members of the putative class were not paid for all of the time spent performing the duties that occurred after leaving the client's residence, which regularly amounted to 30-90 minutes - and sometimes up to two hours - of additional work duties each day.  (Pl.'s Br. 2; Am. Compl. ¶¶ 28-30.)

**B.   Lunch Break Deductions**

As to the second purported FLSA violation, automatic lunch

break deductions, Plaintiff asserts that Defendants

"automatically deduct[ed] 30 minutes of paid time from the work

day from all class members as a lunch deduction ... [even] when

no 30-minute *bona [] fide* meal break was taken." (Pl.'s Br. 2;

Am. Compl. ¶¶ 33, 35.) Plaintiff alleges that Defendants took

this 30 minute deduction from the paychecks of Plaintiff and

putative class members for each shift they worked, regardless of

whether the employee actually took a lunch break. (Am. Compl. ¶

33.) Plaintiff further asserts that Defendants did not require

employees to take a lunch break and "did not attempt in any

manner to track whether lunch breaks were taken." (Pl.'s Br. 2;

Am. Compl. ¶ 34.) Plaintiff alleges that he and the members of

the putative class "rarely, if ever, took a bona-fide 30 minute

uninterrupted lunch break" and were consistently "not being paid

for all hours [they] worked" because this 30 minute lunch break

deduction was applied regardless of whether a break was taken.

(Am. Compl. ¶¶ 36-37.)

    **C.**    **Calculation of Overtime "Regular Rate"**

    The final purported FLSA violation Plaintiff alleges here

relates to Defendants' purported failure to properly calculate

Plaintiff and the putative class members' "regular rate" of pay

for purposes of computing the overtime compensation due to these

employees.  (Pl.'s Br. 2.)  According to Plaintiff, he and the members of the putative class were not only paid on an hourly basis but also received compensation in the form of commissions. Plaintiff alleges that despite paying these commissions, Defendants "failed to include [those] commission[s] in[] a 'weighted average' when determining ... [an employee's] regular rate" of pay – the rate that was then used to calculate that employee's overtime compensation.  (Am. Compl. ¶ 39.)  As a result of this failure, Plaintiff asserts that Defendants improperly paid him and members of the putative class less than 1.5 times their regular rate for overtime because their overtime rate was based solely on their usual hourly rate.  (Am. Compl. ¶ 41.)  Plaintiff contends that Defendants did not calculate overtime based on all remuneration employees received, (see Pl.'s Br. 2), and did so on a consistent basis except for weeks where no commissions were earned or no overtime hours were worked.  (Am. Compl. ¶ 42.)

## III. <u>DISCUSSION</u>

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract" and "gives employees the right to bring a private cause of action on

their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA." Genesis Healthcare Corp. v. Symczyk, --- U.S. ----, 133 S. Ct. 1523, 1527 (2013) (citing 29 U.S.C. § 216(b)).  "A suit brought on behalf of other employees is known as a 'collective action.'" Id.  The Third Circuit has explained that, pursuant to 29 U.S.C. § 216(b) of the FLSA, "an employee may bring an action against his employer individually, on his own behalf, and collectively, on behalf of other 'similarly situated' employees." Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 242 (3d Cir. 2013). The distinction between the collective action mechanism of the FLSA and the class action mechanism of Federal Rule of Civil Procedure 23 is that "employees must affirmatively opt-in by filing written consents with the court" in "order to become parties to a collective action under" 29 U.S.C. § 216(b), where Rule 23 class actions require those not wishing to be included in the class to affirmatively opt-out after the class has been certified.  Camesi, 729 F.3d at 242-43.

Relevant to deciding the present motion, the Third Circuit has recognized that district courts in this "Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." Id. (citing

Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 535 (3d Cir.
2012)).[4]  The first step of this process - commonly referred to
as "conditional certification" - is "not really a certification"
but "is actually the district court's exercise of [its]
discretionary power, upheld in Hoffmann-La Roche [Inc. v.
Sperling, 493 U.S. 165, 110 S. Ct. 482, 107 L.Ed.2d 480 (1989)],
to facilitate the sending of notice to potential class members,
and is neither necessary nor sufficient for the existence of a
representative action under [the] FLSA." Zavala, 691 F.3d at
536 (citations and internal quotations omitted).  For purposes
of this initial stage, the Third Circuit has adopted the "modest
factual showing" standard which requires "a plaintiff ... [to]
produce some evidence, 'beyond pure speculation,' of a factual
nexus between the manner in which the employer's alleged policy
affected h[im] and the manner in which it affected other
employees." Zavala, 691 F.3d at 536 n.4 (citations omitted).[5]

---

[4]    As recognized by the Third Circuit "this two-tier approach,
while 'nowhere mandated, ... appears to have garnered wide
acceptance[,]'" and the Court of Appeals has "implicitly
embraced this two-step approach, and ... affirm[ed] its use[.]"
Zavala, 691 F.3d at 536 (citation omitted).

[5]    To explain the distinction between the first and second
steps of this process under the FLSA, the Third Circuit,
borrowing from the Second Circuit, clarified that the purpose of
the initial step is to "determin[e] whether 'similarly situated'
plaintiffs do in fact exist, while at the second stage, the

So long as the plaintiff satisfies his burden at this initial stage, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." Camesi, 729 F.3d at 243.  After discovery, the second step in the process requires the Court to "'make[] a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff.'"  Id. (citing Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 193 (3d Cir. 2011), rev'd on other grounds, Symczyk, 133 S. Ct. at 1526).  The second stage of this process is typically "triggered by the plaintiffs' motion for 'final certification,' by the defendants' motion for 'decertification,' or, commonly, by both." Camesi, 729 F.3d at 243.  Where a plaintiff is successful in satisfying the heavier burden imposed at the second stage of the process, then the case may proceed on the merits as a collective action.  Id.  Importantly, "[i]t is possible for a class to be certified at stage one but fail certification at stage two.  Granting a conditional

---

District Court determines whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Zavala, 691 F.3d at 536 n.4 (citing Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)) (internal quotations omitted).

certification in stage one is not a final or permanent decision." Garcia v. Freedom Mortg. Corp., 790 F. Supp. 2d 283, 286 (D.N.J. 2011).

IV.  **ANALYSIS**

Plaintiff's motion seeks conditional certification under the first step of the FLSA's collective action process.  This step is sometimes referred to as the "notice stage" because the Court is not actually certifying a class, but rather exercising its discretionary power to facilitate notice to potential class members.  See Zavala, 691 F.3d at 536.  The Court is cognizant that in deciding Plaintiff's motion, the Court is not being asked to evaluate the merits of Plaintiff's claimed FLSA violations.  See, e.g., Goodman v. Burlington Coat Factory, No. 11-4395, 2012 WL 5944000, at *5 (D.N.J. Nov. 20, 2012) ("At this stage, the Court's role is not to evaluate the merits of Plaintiffs' claim[.]"); Steinberg v. TD Bank, N.A., No. 10-CV-5600, 2012 WL 2500331, at *5 (D.N.J. June 27, 2012) ("The court does not consider the merits of the dispute at this time, and the plaintiff must only demonstrate that the potential class members' 'positions are similar, not identical,' to his own.") (citations omitted).  Rather, the Court must determine whether

12

other "similarly situated" employees, i.e., potential plaintiffs, do in fact exist, such that the Court should facilitate notice as Plaintiff requests.  See Zavala, 691 F.3d at 536 n.4.

In making this determination, the Court applies a "fairly lenient standard" which only requires Plaintiff to make a "modest factual showing" that he is similarly situated to other employees.  Camesi, 729 F.3d at 243; see also Afsur v. Riya Chutney Manor LLC, No. 12-03832, 2013 WL 3509620, at *2 (D.N.J. July 11, 2013) ("The determination, moreover, 'is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.'") (citation omitted). To satisfy this burden, Plaintiff must "produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected h[im] and the manner in which it affected other employees."  Zavala, 691 F.3d at 536 n.4 (citations omitted).

Here, Plaintiff alleges three distinct FLSA violations relating to: (1) unpaid post-shift time spent performing work duties; (2) automatic 30-minute lunch break deductions taken from each work shift; and (3) improper calculation of an employee's regular rate of pay when computing his overtime

13

compensation.   In support of his request for conditional certification, Plaintiff argues that "he is similarly situated to all other laborers and foremen (the 'putative class') because he, like all members of the putative class, was subjected to [these] three distinct wage and hour violations of the Defendants."  (Pl.'s Br. 1.)

Plaintiff further asserts that Defendants' conduct that allegedly violated the FLSA "was based on official policies of [Enviro Pro] which were applied equally to the entire putative class."  (Id.)  Plaintiff relies on testimony and declarations offered by himself and the two Opt-In Plaintiffs, Ryan Bowe and Cody Bowe, as well as testimony from Defendants which demonstrates that the challenged policies were official policies of Enviro Pro that applied equally to all members of the putative class.  (Id.)

To demonstrate that other "similarly situated" employees to Plaintiff exist, Plaintiff was required to make a modest factual showing by producing some evidence, beyond pure speculation, that there is a factual nexus between the manner in which Enviro Pro's alleged policies affected Plaintiff and the manner in which they affected other employees.  See Camesi, 729 F.3d at 243; Zavala, 691 F.3d at 536 n.4.  Based on the record presently

14

before the Court on this motion, Plaintiff has met his burden,
and the Court finds that this case should be conditionally
certified at this stage of the litigation.[6]  The Court is
satisfied that the evidence at this point shows that similarly
situated individuals to Plaintiff do in fact exits.  Following
issuance of notice here, at the second stage of the process, the
Court will independently assess "whether the plaintiffs who have
opted in are in fact similarly situated to the named plaintiff."
Zavala, 691 F.3d at 536, n.4.

In this case, Plaintiff worked in the capacity of "Foreman
and/or Service Manager" and has shown that his job
responsibilities included "performing the same work as a laborer
(i.e. installation and waterproofing services), overseeing the
quality of work or other laborers, dealing with customers on the
job site, and handling payments from customers."  (Pl.'s Br. -
SOF ¶¶ 2-3); (see also Dep. Of Jason Bowe, Ex. B to Mot., 30:4-
31:18; Dep. of Michael Troyner, Ex. A to Mot., 14:12-15:21.)

---

[6]     To be clear, the Court is not, at this time, weighing the
merits of the purported FLSA violations alleged in the amended
complaint.  Rather, the Court has simply found that Plaintiff
has made a modest factual showing that to the extent that
Defendants' allegedly unlawful compensation practices affected
Plaintiff, they affected other potential collective action
plaintiffs in the same or a similar way.  See Goodman, 2012 WL
5944000, at *5.

Furthermore, Plaintiff has established that "the foreman's and laborers' job duties regarding installation, waterproofing, and manual labor were the same." (Pl.'s Br. – SOF ¶ 4.) Defendant Troyner, owner and operator of Enviro Pro, testified that both laborers and foremen perform the same functions and that the foremen are considered "working forem[e]n". (Dep. of Michael Troyner, Ex. A to Mot., 15:12-15.) Additionally, both foremen and laborers shared the same work schedule – meeting at the Newfield location at 7:00 a.m. and working at a client's residence until 3:30 p.m. (Pl.'s Br. - SOF ¶ 5) (citing Dep. of Cynthia Troyner – 30(b)(6) Corporate Designee, Ex. D. to Mot., 18:12-19.) They also traveled to, and returned from, their assigned job sites together, and thus worked on each respective job for the same amount of time. (Pl.'s Br. - SOF ¶ 6) (citing Dep. of Cynthia Troyner – 30(b)(6) Corporate Designee, Ex. D. to Mot., 65:2-9.)

Furthermore, Plaintiff has demonstrated that he is similarly situated to other members of the putative class (i.e., other foremen and laborers) by producing evidence that indicates he and members of the putative class were subject to the same employment policies and practices of Defendants which applied across the board to both foremen and laborers. For example,

with respect to the issue of unpaid post-shift hours worked,
Plaintiff points to testimony by Barbara Ogonowski, Enviro Pro's
Office Manager, which establishes "that Defendants' policy was
to pay their workers from their time of arrival at Defendants'
Newfield location until the time of departure [from] the
client's residence." (Pl.'s Br 10; Statement of Facts ¶¶ 12-13,
15.) Specifically, Ms. Ogonowski testified that the policy of
Enviro Pro was to have the foreman on each assigned job send a
text message to Defendant's Newfield location detailing the
hours worked by both the laborers and the foremen at the time
the crew departed the client's residence. (Dep. Of Barbara
Ogonowski, Ex. E to Pl.'s Br., 28:2-29:14; see also Ex. O-1,
"Service Quality and Customer Satisfaction" Checklist.) She
further testified that it was Defendants' practice to record
employee hours and compensate them accordingly, based on these
text messages which indicated the amount of hours worked as of
the time of departure. (Dep. Of Barbara Ogonowski, Ex. E to
Pl.'s Br., 28:2-29:14.)

It is clear, however, from the declarations offered by
Plaintiff, and the Opt-In Plaintiffs Cody Bowe and Ryan Bowe,
that the laborers and foremen had additional work duties to
perform after departing a client's residence which included

transporting company vehicles and supplies back to the Newfield location, unloading and cleaning the vehicles for the next day, and restocking new materials.  (See e.g., Decl. of Jason Bowe, Ex. F ¶¶ 4-8, 22; Decl. of Ryan Bowe, Ex. G ¶¶ 4-9, 23; Decl. of Cody Bowe, Ex. H ¶¶ 4-9, 20.)  Moreover, it is clear from the record that neither foremen, nor laborers were compensated for this additional time spent performing work duties.[7]  The record further demonstrates that Defendants applied this policy equally upon Plaintiff and all members of the putative class.

Correspondingly, Plaintiff has also produced evidence beyond mere speculation that Defendants' policies and practices regarding (1) automatic 30-minute lunch break deductions and (2) improper calculation of employees' regular rate of pay for overtime purposes, were applied equally to Plaintiff and to all other foremen and laborers employed by Enviro Pro.  For example, Defendants' corporate designee, Cynthia Troyner, testified that employees – laborers and foremen alike - were compensated based on arrival at the Newfield location at 7:00 a.m. and departure from the client's residence at 3:30 p.m. with a 30-minute deduction taken and designated as a lunch break for all

---

[7]    The Court reiterates that it is not making a determination at this time of whether this alleged conduct violated the FLSA.

employees when their total hours for the day were reported. (Dep. of Cynthia Troyner – 30(b)(6) Corporate Designee, Ex. D. to Mot., 75:8-13; see also id. at 24:8-25:8.) Plaintiff, Ryan Bowe, and Cody Bowe all provided sworn declarations that Enviro Pro "automatically deduced 30 minutes of paid time every day from [their] paycheck[s] for each shift [they] worked, whether or not a lunch break was taken" even though these employees "rarely, if ever, took a bona-fide 30 minute uninterrupted lunch break." (See e.g., Decl. of Jason Bowe, Ex. F ¶¶ 14, 16; Decl. of Ryan Bowe, Ex. G ¶¶ 15, 17; Decl. of Cody Bowe, Ex. H ¶¶ 15, 17.)

Similarly, Cynthia Troyner also testified that all employees, laborers and foremen alike, were eligible to receive commissions in addition to their standard hourly pay, but that their "[c]ommission[s] ha[d] ... nothing to do with [their] overtime" compensation. (Dep. of Cynthia Troyner – 30(b)(6) Corporate Designee, Ex. D. to Mot., 34:19-35:14, 37:13-18, 43:11-44:8.) Further, the declarations of Plaintiff and Ryan Bowe, along with the attached copies of their respective paystubs, mathematically demonstrate that Defendants did not include the commissions earned by either foremen or laborers

when calculating the rate of their overtime compensation.[8]  (See
e.g., Decl. of Jason Bowe, Ex. F ¶¶ 19-21; Decl. of Ryan Bowe,
Ex. G ¶¶ 20-22.)

     In summary, the Court is satisfied that Plaintiff met his
burden to make a modest factual showing that he is similarly
situated to Defendants' other employees – both laborers and
foremen – because these employees performed the same type of
work and Plaintiff served as a foreman at Enviro Pro.  With
respect to the three purported FLSA violations alleged in the
complaint, the record at this stage of the litigation
demonstrates that Plaintiff and all members of the putative
class were subject to the same employment policies and practices
imposed by Defendant and were compensated in a similar fashion,
and that similarly situated plaintiffs do in fact exist.
Therefore, the Court will conditionally certify this action as a
collective action under the FLSA and will therefore facilitate
notice to putative class members.


**V.**     **NOTICE**

     Plaintiff's motion for conditional certification also

---

[8]    Again, the Court's findings in this Opinion should not be
construed as an assessment of the merits of Plaintiff's claims
that the alleged conduct violated the FLSA.

requests that the Court "order facilitated notice by requiring
Defendants to provide the last known contact information for all
individuals who were employed as foremen and/or laborers from
March 11, 2010 ... to the present" in order to permit Plaintiff
to provide notice to each such individual.  (Pl.'s Br. 14.)
Plaintiff further requests that the Court order the parties to
meet and confer regarding the form and timing of the notice and
provide the Court with a copy of the agreed upon draft notice
and the details as to the method of notice all within fifteen
(15) days of the date of this Opinion.  (Id.)  Plaintiff
suggests that if the parties are unable to agree upon the
language for the proposed form of notice, each party will submit
its proposed notice within fifteen (15) days of the Court's
Opinion.

     The Court will grant Plaintiff's request that Defendants
provide the last known contact information for all individuals
who were employed by Defendants as foremen and/or laborers from
March 11, 2010 until the present.  The Court will also grant
Plaintiff's request that the parties be ordered to meet and
confer and submit to the Court a proposed agreed upon form of
notice within fifteen (15) days of the date of this Opinion.  To
the extent the parties are unable to agree and submit a proposed

agreed upon notice within that time, the Court will permit each party to submit their own proposed notice within fifteen days of the expiration of the initial fifteen day period set forth above.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for conditionally certification of this case as a collective action under the FLSA is granted.  An Order consistent with this Opinion will be entered.

Date: December 4, 2013              s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.