## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

———————————————————

JASON BOWE,                          Civil No. 12-2099 (NLH/KMW)

        Plaintiff,

                              **OPINION**

   v.

ENVIRO PRO BASEMENT SYSTEMS,
et al.,

        Defendants.

———————————————————

**APPEARANCES:**

Justin L. Swidler
Nicholas Dennis George
Swartz Swidler, LLC
1878 Marlton Pike East
Society Hill Office Park
Suite 10
Cherry Hill, New Jersey 08003
    *Attorneys for Plaintiff Jason Bowe*

James M. Carter
Law Offices of Hoffman DiMuzio
4270 Route 42
Turnersville, New Jersey 08012
    *Attorney for Defendants Enviro Pro Basement Systems and*
    *Michael Troyner*

**HILLMAN, District Judge**

    This matter comes before the Court by way of Plaintiffs'

motion for summary judgment [Doc. No. 42].  Defendants have not

filed opposition brief, only a "Statement of Material Facts in

Opposition" [Doc. No. 47].  The Court has considered the

parties' submissions and decides this matter pursuant to Federal

Rule of Civil Procedure 78.

For the reasons expressed below, Plaintiffs' motion will be granted in part and denied in part.

## I.   **JURISDICTION**

This class has been conditionally certified pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Accordingly, the Court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## II.  **BACKGROUND**

Defendant Enviro Pro Basement Systems (hereinafter, "Enviro Pro") is a residential basement waterproofing business that also installs water removal systems in residential homes.[1]  See Am. Compl. ¶ 7.  Defendant Michael Troyner is the owner and operator of Enviro Pro.  Am. Compl. ¶ 8.  Plaintiff Jason Bowe was employed by Defendants from approximately 2005 (or 2006) until his termination in February 2012.  Am. Compl. ¶ 17.  From

---

[1]   There appears to be no dispute that Enviro Pro is an employer within the meaning of 29 U.S.C. § 203(d) which provides in pertinent part that an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."  29 U.S.C. § 203(d).

approximately April 1, 2009 through the date of his termination,
Plaintiff worked in the capacity of Foreman and Service Manager.

Plaintiff's Amended Complaint alleges that he and the
conditionally certified Collective Action Plaintiffs
(collectively, "Plaintiffs") were laborers whose primary duties
involved providing basement waterproofing services, including,
but not limited to, removal of mold and mildew, painting
surfaces, and installing pumps. Am. Compl. ¶ 22. Plaintiffs
assert that their daily job routine consisted of:

> (a) arriving at Defendants' Newfield, NJ location
> to receive information relating to the day's
> assignments, to load the company vehicle with
> supplies needed for the job, and to transport
> the company vehicle and employees to the job
> site;
> (b) transporting said vehicle and employees to the
> job site;
> (c) engaging in basement waterproofing services at
> the customer job site;
> (d) transporting the vehicle, employees, and
> supplies from the customer job site [back] to
> Defendants' Newfield, NJ location; and
> (e) unloading the company vehicle, cleaning and
> preparing the company vehicle for use the next
> day, and restocking new materials.

Am. Compl. ¶ 23.

Plaintiffs allege that Defendants violated the FLSA by: (1)
failing to pay hourly employees for all their compensable work
time; (2) automatically deducting 30 minutes of paid time from
the work day as a lunch deduction even when no *bona fide* 30-

minute lunch break was taken; and (3) improperly calculating the regular rate of pay when determining appropriate overtime compensation for Jason and Ryan Bowe.

On December 4, 2013, Plaintiff Jason Bowe's class was conditionally certified.  Since the filing of his Amended Complaint, six Plaintiffs have filed Consents to Join in this collective action: Cody Bowe, Ryan Bowe, Charles Esposito, David Nordberg, Aaron Malloy, and Michael Burke.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary

4

judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

IV.   **DISCUSSION**

**A. Overtime Compensation**

Plaintiffs first ask the Court to grant summary judgment on their FLSA claims because the undisputed facts demonstrate that

5

Defendants failed to pay Plaintiffs overtime wages for time worked: (1) after 3:30 p.m.; (2) during lunch breaks; and (3) at appropriate rates for weeks in which Jason and Ryan Bowe earned commissions.

### 1. Unpaid Post-Shift Hours Worked

The record is undisputed that Plaintiffs reported to work around 7 a.m. and were paid until 3:30 p.m.  Plaintiffs allege that they were not paid for work which often occurred after 3:30 p.m., including transporting the company vehicles, employees, and supplies back to the Newfield location (hereafter, "home base"); unloading and cleaning the company vehicles; preparing the vehicles for use the following day; and restocking deliverables.  Am. Compl. ¶¶ 26-27; Pl.'s Statement of Material Facts ("SMF") ¶ 34.  Plaintiffs allege this work regularly amounted to 30-90 minutes - and sometimes up to two hours - of additional unpaid work duties each day.  Am. Compl. ¶¶ 28-30.

The FLSA requires employers to pay employees at a rate of one and a half times the employees' regular rate for all hours worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1); IBP, Inc. v. Alvarez, 546 U.S. 21, 25, 126 S. Ct. 514, 518, 163 L. Ed. 2d 288 (2005).  In 1945, Congress passed the Portal-to-Portal Act which excluded from compensation activities which are

preliminary or postliminary to the principal work activity.  Id. at 26-27.  Then in 1947, the Department of Labor enacted the "continuous work day rule," which mandated that workers must be compensated for "the period between the commencement and completion on the same workday of an employee's principal activity or activities."  Id. at 28 (citing 29 CFR § 790.6(b)). The Supreme Court clarified this definition in Steiner v. Mitchell, 350 U.S. 247, 248, 76 S.Ct. 330, 100 L.Ed. 267 (1956), holding that "the term 'principal activity or activities' in [the Portal-to-Portal Act] embraces all activities which are an 'integral and indispensable part of the principal activities.'" Id. at 29-30.

Thus, the questions before the Court are whether after 3:30 p.m. Plaintiffs were required to drive Defendants' vehicles and supplies back to home base where they then prepared the vehicles for the following day and whether Plaintiffs should have been compensated for this work.

Defendants essentially argue that if Plaintiffs were ever required to work over eight hours per day, they owed more time to the company than they would have been paid overtime because they often arrived around 15 minutes late to the start of a shift, were paid for coffee stops, and were paid for a full

7

eight-hour shift each day, even if they worked substantially less.  <u>See</u> Defs.' Statement of Material Facts in Opp. ("Opp. Facts") ¶ 25.  Defendants' argument is unavailing.  If Plaintiffs worked over 40 hours per week they must be paid overtime for those hours.  Defendants cannot unilaterally "bank" time previously paid to its employees and subtract any amount of owed overtime, based on their estimations.

The record is undisputed that Defendants did not pay Plaintiffs for returning the work vehicles to home base if it occurred after 3:30 p.m.  SMF ¶ 33.[2]  Barbara Ogonowski, an Office Manager at Enviro Pro during the relevant time period, testified that Defendants did not pay Plaintiffs for driving the work vehicles back to home base after 3:30 p.m.:

> Q: Okay, so the question was: did [D]efendants fail to pay the foreman and the laborers for time spent transporting the trucks from the job site to the home base?
>
> A: Did they pay them?
>
> Q: Did they fail to pay them?
>
> A: Did they fail to pay them? Yes.

---

[2] As discussed above, Defendants assert they did pay Plaintiffs for the time they spent transporting the company vehicles and supplies back to home base based on their "banked" time theory – an argument the Court rejects.  SMF ¶ 33.  Defendants do not dispute Plaintiffs were not actually paid after 3:30 p.m.

Decl. of Matthew Miller, Ex. D, Ogonowski Dep. 46:13-19.  This testimony is further supported by the fact that Plaintiffs were required to text home base at the time of their departure from a customer's house in order to create a record their hours worked, and not when they returned to home base.  Ogonowski Dep. 29:1-14.

Each morning, Plaintiffs were required to first report to home base to pick up tools and were paid for travel time from home base to a customer's home.  Plaintiffs were entitled to, and received, compensation for this time because loading and preparing the trucks at home base was the first principal work activity.  29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.").  Plaintiffs were not, however, paid for travel time from the customer's home back to home base if that travel time occurred after 3:30 p.m.  Plaintiffs were entitled to be paid for the time spent returning the work vehicles and supplies back to home base since that activity was "integral and indispensable" to the principal activity of

traveling to a customer's home to perform waterproofing and other services.  29 C.F.R. § 790.6(a) ("[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked ..."); Pehle v. Dufour, No. 06-1889, 2012 WL 4490955, at *10 (E.D. Cal. Sept. 28, 2012) ("Loading the van at the shop and/or supply house and driving it to the job sites, and then returning the van to the shop at the end of the day, were 'integral and indispensable' parts of plaintiff's principal activities as an electrician for defendants, and were neither 'preliminary or postliminary activities.'").  Put another way, if Defendants did not require Plaintiffs to perform this work the vehicles would remain at the customer's residence overnight and Defendants would not have the vehicles at their disposal the following morning.  Thus, returning the vehicles was part of each day's work and benefitted Defendants.[3]

Defendants raised no dispute of fact that Plaintiffs were required to bring the work truck back to home base in

---

[3] Plaintiff Jason Bowe testified that he was sometimes permitted to bring a work truck home.  The travel time from the job site to his home in the work truck which occurred after 3:30 p.m. is not compensable and should not be included in any calculation.

anticipation of the next day's assignment.  This time must be compensated.  If any employee traveled from a worksite directly home after 3:30 p.m. in a work vehicle or personal vehicle that time is not compensable.  29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime.").

While there is no dispute that Defendants failed to compensate Plaintiffs for driving the work vehicles back to home base after 3:30 p.m., there is a material fact question as to whether Plaintiffs worked additional time prepping the vehicles for the following day once there.  Decl. of James M. Carter, Ex. C, M. Toryner Dep. at 19:9-21 (testifying that waste from a job is not disposed of until the following morning); Decl. of James M. Carter, Ex. A, C. Troyner Dep. at 19:15-21 ("It's just very typical that every morning, bags are coming off the trucks."); SMF ¶ 31 (citing Ex. M ¶ 5; Ex. N ¶ 5; Ex. O ¶ 5; Ex. P ¶ 5; Ex. Q ¶ 5; Ex. R ¶ 5; Ex. S ¶ 5) (stating that Plaintiffs prepped the vehicles upon returning to home base at the end of the day).

Accordingly, Plaintiffs are entitled to compensation for time spent bringing the work vehicles and supplies from the job site back to home base after 3:30 p.m.  However, in their calculations, Plaintiffs have combined the time spent returning the vehicles to home base and additional time worked once there.

Whether Plaintiffs performed additional work duties when back at home base is a disputed question of fact for a jury. Therefore, at this time the Court is unable to determine how much overtime Plaintiffs are owed.

### 2. Lunch Break Deductions

As to the second purported FLSA violation, automatic lunch break deductions, Plaintiffs assert that Defendants automatically deducted 30 minutes of paid time from the work day for lunch even when no *bona fide* meal break was taken. Am. Compl. ¶¶ 33, 35. Plaintiffs further assert that Defendants did not require employees to take a lunch break and did not attempt in any way to track whether lunch breaks occurred. Am. Compl. ¶ 34. Plaintiffs allege they "rarely, if ever, took a bona-fide 30 minute uninterrupted lunch break" and were consistently docked 30 minutes of paid work time. Am. Compl. ¶¶ 36-37.

The Department of Labor ("DOL") describes *bona fide* meal periods as follow:

> Bona fide meal periods are not worktime.... The employee must be completely relieved from duty for purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is

12

required to be at his machine is working while
eating.

29 C.F.R. § 785.19(a).

Defendants do not dispute that Plaintiffs were
automatically deducted thirty minutes of time whether or not
they took a *bona fide* lunch break.  SMF ¶ 38; Opp. Facts ¶ 38.
Defendants also do not dispute that they did not require or
monitor lunch breaks and did not have any policy or procedure by
which employees could report a missed lunch break to avoid the
automatic deduction.  SMF ¶¶ 39-41.  Defendants respond to
Plaintiffs' allegations by asserting that they did not know
Plaintiffs were missing lunch breaks.  Further, Michael Troyner,
the owner, testified that he often observed his employees taking
lunch breaks.  See Decl. of James M. Carter, Ex. C, Dep. of M.
Troyner 9:16-10:9 ("I have arrived on many of these work sites
and interrupted their lunch.").  Plaintiffs, in turn, testified
that they rarely, if ever, took a *bona fide* 30-minute lunch
breaks.  SMF ¶ 42 (citing Ex. M ¶¶ 15-17; Ex. N ¶¶ 15-17; Ex. O
¶¶ 15-17; Ex. P ¶¶ 15-17; Ex. Q ¶¶ 15-17; Ex. R ¶¶ 15-17; Ex. S
¶¶ 15-17).  Thus, before the Court is a pure credibility
determination.  Accordingly, summary judgment will be denied as
to this claim.

### 3.   Calculation of Overtime "Regular Rate"

The final purported FLSA violation alleged by Plaintiffs relates to Defendants' purported failure to properly calculate Jason and Ryan Bowe's overtime pay during weeks in which they earned commission.  Jason and Ryan Bowe allege that despite paying these commissions, Defendants "failed to include [those] commission[s] in[] a 'weighted average' when determining ... [an employee's] regular rate" of pay – the rate that was then used to calculate that employee's overtime compensation.  Am. Compl. ¶ 39.

Under the FLSA, "[c]ommissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate [for computing overtime]."  29 C.F.R. § 778.117.  Defendants do not dispute that they failed to include commissions earned by Jason and Ryan Bowe in the calculation of their regular rate in every workweek in which they earned commission and worked in excess of 40 hours.  Opp. Facts ¶ 44.  Accordingly, Plaintiffs Jason and Ryan Bowe are entitled to summary judgment on this claim.[4]

---

[4] Jason and Ryan Bowe have included in their calculations overtime owed for time spent returning the work vehicles to home base and prepping for the following work day once there.  The Court has found as a matter of law that Jason and Ryan Bowe were entitled to be paid for time spent bringing the work vehicles

14

**B. Individual Liability**

Plaintiffs argue summary judgment is warranted as to individual liability against Enviro Pro owner Michael Troyner for failing to pay overtime compensation.  "A corporate officer with operational control is an 'employer', along with the corporation, jointly and severally liable under the Act for unpaid wages.  Further, any such corporate officer is liable in his individual, not representative, capacity." Dole v. Haulaway Inc., 723 F. Supp. 274, 286-87 (D.N.J. 1989) aff'd, 914 F.2d 242 (3d Cir. 1990), cert. denied, 499 U.S. 936 (1991) (citations omitted); Sandom v. Travelers Mortgage Servs., Inc., 752 F. Supp. 1240, 1251 (D.N.J. 1990) (same); Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983) ("The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.").  While Michael Troyer may have individual liability imposed on him, Plaintiffs have not shown Michael Troyner is liable under the circumstances as a matter of law.

---

and supplies from the last job site back to home base.  However, there is a disputed fact question as to whether any work was done once there.  Thus, the Court is unable to determine how much overtime these Plaintiffs are entitled to because these figures have been combined.

Factual questions exist as to whether Michael Troyner was personally responsible for failing to pay Plaintiffs appropriate compensation.  See Crossley v. Elliot, No. 07-0017, 2011 WL 1107868, at *7 (D.V.I. Mar. 25, 2011) ("individuals can be held liable for FLSA violations only when they have control over compensation or payroll functions and are personally involved in decisions which ultimately violate the FLSA") (citing cases). Accordingly, summary judgment is denied as to this claim.

### C. Plaintiff's Estimates of Unpaid Time Worked

When an employee brings a claim under the FLSA he or she bears the initial burden of proving that he or she was not properly compensated.  Reich v. Gateway Press, Inc., 13 F.3d 685, 701 (3d Cir. 1994) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187 (1946)).  Recognizing that this burden is difficult to meet if an employer has not maintained its records, "'[t]he burden of any consequent imprecision [in an employee's calculation of damages] must be borne by th[e] employer,' id. (citing Anderson, 328 U.S. at 688, 66 S.Ct. 1187), and the employee will only be required to 'submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred.' Once this inference is created, the burden shifts to the employer to

rebut that inference." Rosano v. Twp. of Teaneck, 754 F.3d 177, 188 (3d Cir. 2014) (internal citations omitted).

Plaintiffs argue it is undisputed that Defendants did not maintain records of job site locations or work performed at home base at the end of the day and thus the Andersen burden-shifting framework applies. Plaintiffs estimate they were uncompensated for 30-90 minutes per day of travel and shop time, so demand compensation for 60 minutes per day as an average. However, at this time, it is a disputed question of fact as to whether Plaintiffs performed work after arriving back at home base. See Section IV.A.1., supra. Accordingly, one of two things may happen going forward: one, a jury may find that Plaintiffs did regularly perform work back at home base after returning the vehicles and should be compensated for the average of 60 minutes, or two, a jury may find Plaintiffs did not regularly perform work back at home base and thus Plaintiffs will only be entitled to the average travel time from the last job site to home base.

Relatedly, a question of fact exists as to whether Plaintiffs took daily *bona fide* meal breaks. See Section IV.A.2., supra. Further, while the Court has found that Defendants failed to pay Jason and Ryan Bowe a proper overtime

rate during weeks in which they earned commissions, the Court cannot yet determine whether overtimes wages for post-shift work and meal break deductions should be included in this calculation.

### D. Liquidated Damages

Employers who violate the FLSA are liable to the affected employee for any unpaid overtime compensation, and for an additional equal amount as liquidated damages. 29 U.S.C. § 216(b).  However, "the district court in its sound discretion [is permitted] to withhold or reduce the amount of liquidated damages 'if the employer shows ... that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'"  Brooks v. Vill. of Ridgefield Park, 185 F.3d 130, 137 (3d Cir. 1999) (citing 29 U.S.C. § 260).

> The good faith requirement is a subjective one that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." . . . The reasonableness requirement imposes an objective standard by which to judge the employer's conduct . . . Ignorance alone will not exonerate the employer under the objective reasonableness test . . . If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

Id. (citing Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 907-08 (3d Cir. 1991)).  Here, Defendants have come forward with no evidence to satisfy the good faith and reasonable requirements.  Thus, the Court has no reason to limit or deny the statutory liquidated damages and will award an additional equal amount of liquidated damages once the unpaid overtime compensation is appropriately calculated.

**E. Gap Time**

Count II of the Amended Complaint alleges a claim under the New Jersey Wage and Hour Law (NJWHL), N.J.S.A. 34:11-56a et seq., as to the "Named Plaintiff" only for "failure to pay overtime."  Am. Compl. ¶ 54.  Count III alleges a claim under the New Jersey Wage Payment Law (NJWPL), N.J.S.A. 34:11-4.1 et seq., also as to the "Named Plaintiff" only for "failure to pay wages."  Am. Compl. ¶ 62.  Both claims are designated in the Amended Complaint as "Individual Claims[s]."  Am. Compl. at 10. In the instant motion for summary judgment, Plaintiffs seek summary judgment under the NJWPL.  Pl.'s Br. at 20-21. Plaintiff's Amended Complaint states that "Defendants' aforementioned conduct violated the New Jersey Wage Payment Collection Law" and "[a]s a result of Defendants' aforesaid

19

illegal actions, Named Plaintiff has suffered damages." Am. Compl. ¶¶ 61-62.

As a preliminary matter, Plaintiffs cannot collectively seek summary judgment when the Amended Complaint only asserts claims as to the Named Plaintiff, Jason Bowe. Plaintiffs cannot use a brief to add claims or causes of action to a complaint. Accordingly, to the extent Plaintiffs other than Jason Bowe seek the entry of summary judgment as to the NJWPL claims, that relief will be denied.

As to Jason Rowe's individual claim under the NJWPL, the Court is unable to determine whether Jason Rowe is entitled to summary judgment because it is not clear to the Court what conduct is alleged in Count III. For example, the Court does not know whether Plaintiff Jason Rowe's individual claim references unpaid commissions or unpaid hours, or under what provisions of the statute he seeks relief. In fact, Plaintiff does not reference the statute at all in his Amended Complaint. Thus, at this time, the Court is unable to determine whether Plaintiff is entitled to judgment as a matter of law on this claim. Accordingly, summary judgment on the NJWPL claim will be denied.

V.    **CONCLUSION**

For the foregoing reasons Plaintiffs' motion for summary judgment will be granted in part and denied in part.  Summary judgment will be granted on Plaintiffs' claims that they were not paid for driving work vehicles back to home base after 3:30 p.m. and for liquidated damages.  Jason and Ryan Bowe are entitled to summary judgment on their claim regarding the calculation of overtime in the weeks in which they earned commissions.  Questions of fact exist as to whether Plaintiffs performed work once back at home base and whether Plaintiffs were deducted 30 minutes of paid time from the work day for lunch even when no *bona fide* meal break was taken.  Plaintiffs are not entitled to summary judgment on their individual liability claim because a question of fact exists as to whether Michael Troyner was personally responsible for failing to pay Plaintiffs appropriate compensation.  Plaintiffs will not be granted summary judgment on their state law claims.  An Order consistent with this Opinion will be entered.


Date: December 22, 2015            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

21